v. The Illinois Pollution Control Board, Adelaide, by Benjamin Jacobson, and Protect Wash, Chicago, Adelaide. All right, Ms. Donnelly, you may proceed. Thank you, Douglas. May it please the Court, members of the Council, my name is Karen Donnelly, and I, along with Attorney George Mueller, are here today representing the appellant, Lakeshore Recycling Systems. Your Honors, the Pollution Control Board erred when it found that Lakeshore Recycling Systems failed to comply with the pre-filing notice requirements as set forth in 415 ILCS 5-39.2. Specifically at dispute is whether Lakeshore utilized authentic tax records to identify the owner of a parcel of property located within 250 feet of the proposed facility. Secondly, whether the PCB found that in-person service upon the owner of that parcel via UPS worldwide delivery was improper. Justices, Lakeshore identified the correct property owner, there was actual service, and CN, Canadian National Railway, acknowledged that service. The first point I'm going to touch on, Justices, is the issue of authentic tax records. The statute itself defines how service of the pre-filing notice has to be accomplished, and it states that no later than 14 days before the date upon which the County Board or Governing Body of the Municipality receives a request for the site approval, the applicant shall cause written notice of the request to be served either in person or registered mail upon the owners of all property within the subject area not solely owned by the applicant. And this service, the owners have to be identified via authentic tax records. So now we need to look at what are authentic tax records. They're not defined statutorily, but they're defined in the case law. What's at issue here, and the distinction that we have to draw, is this is a railroad property, and they're unlike any other property because researching the PIN doesn't necessarily give you a tax bill. That can be proven in two ways, Justices, by the fact that in DuPage County, the other authentic tax records, in addition to ours, identified the wrong owner, and Protect West Chicago had to go outside of the tax records in order to make their determination, which was E, J, and E Railway, that they were the correct owner. They simply got it wrong. Now cases they cite to, we're going to start with Scott versus the City of Chicago. And in that case, it was a municipal zoning case involving a declaratory judgment. In that, the municipal code provided that the party had to consult the recorder's office and the authentic tax records. So the Scott court looked to the Bishop case to define what are authentic tax records. The Bishop case, which is a 1992 case, found that that applicant only searched the treasurer's records. But the court held that all three offices play a role, and that would be the clerk, the assessor, and the treasurer. But it didn't find that all three were mandatory. As your honors know, tax bills may be incorrect and outdated. Real estate tax bills are no longer the only source of information. And the Bishop court found that so long as notice is in compliance with the statute and places those potentially interested persons on inquiry, it's sufficient to confer jurisdiction on the county board. Bishop stood for the proposition that if multiple and conflicting tax records exist, you use as many as needed to satisfy that you've identified the correct owner. Mr. Haack, Lakeshore's expert, consulted the county clerk records. He consulted the county treasurer. The map he used was identified as a tax parcel map. It is the only tax record to identify property owners within that 250 feet radius. Mr. Haack submitted his affidavit that he searched the GIS database. He searched the treasurer's website, and he offered exhibit number five, which is labeled DuPage County, Illinois, 2022 Real Estate Tax Assessments. And in that map, it shows two railroads. It shows Canadian National with parentheses behind it, EJ&E, and Union Pacific. At the bottom of that exhibit, it contains Gene Kaczmarek's name, the DuPage County clerk. Mr. Haack goes further. He does additional research to learn that EJ&E was purchased about 10 years prior by Canadian National. For that, we submitted exhibit number six, which was a photo of a building in Homewood with the Canadian National logo on it. Now, your honors, Lakeshore makes a prima facie case, so now the burden shifts to PWC to show that we have not met our jurisdictional requirements. Now, what Protect West Chicago does is they go to old annexation records with their exhibit number one. That is not an authentic tax record as defined in Bishop. Secondly, PWC uses tax bills that do not contain a PIN. Lastly, they rely on their exhibit three, which are records from the Illinois Department of Revenue, which are incomplete because they don't contain PINs, and that's a fact admitted in the PCV decision. Authentic tax records consulted by PWC were simply wrong. The only assessment map found by Mr. Haack was exhibit five, and that was correct. Your honors, the concept of consulting authentic tax records has taken on a life of its own in this case because the PCV construes that as the first requirement in the notice issue to the potential exclusion of the actual owner. Your honor, going on to the second point, and that is the issue of service, and the statute in 39.2 reflects that service of this prefiling notice has to be in person or by registered mail. Lakeshore served Canadian National via UPS at their Canadian headquarters. Notice was signed for, and Lakeshore even received a letter from Canadian National acknowledging the service. As your honors know, in-person service is not specifically defined in the statute. Because the statute is not ambiguous, this court, nor any other court, can read more into it than it contains. The reading has become more liberal as time has gone on. The PCV's own rules now allow for service via third-party commercial carrier. Our own Supreme Court rules have similarly been amended to allow for third-party commercial carriers in recognition of the popularity and efficiency of these carriers. In those particular instances, is service jurisdictional? In those instances, your honor, I'm not aware whether they're jurisdictional or not. I would be happy to research that issue and provide this court with an opinion. But as far as those rules, they do have more to do with the Code of Civil Procedure, which I will address later on in my argument. So it's Lakeshore's argument that service of notice should be more liberal than service of summons in a complaint because it doesn't necessarily involve due process rights. Now the PCV equated personal service from 39.2b to liken it to the Code of Civil Procedure, which actually weighs in the favor of Lakeshore. It states in 735 ILCS 5-204 that service on a private corporation can be had by leaving a copy of process with a registered agent or any other officer or agent of that corporation or in any other manner now or hereafter permitted by law. Supreme Court Rule 102 additionally has been amended to allow for service of summons in complaint by new ways to serve, social media, email, and text message. The waste management case decided by this court in 2005, in which my esteemed colleague, Mr. Mueller, argued, that case deals with actual or constructive notice. In this case, the waste management case, there was no service at all. A process server had attempted private service upon one of the owners of the property. Didn't serve that person, so he posted the notice on their door. It was also mailed, regular mail. There was never any evidence that the intended recipient, one of the owners, received notice. The statement about how service was had in that case is merely dicta, and it's not necessary how the court came to its conclusion. So, therefore, I would submit that that is non-precedential. Are you suggesting that actual notice will excuse compliance with the two alternative bases for service? Judge, I'm not arguing that actual service would excuse it, but the way that Actual notice, sorry. Actual notice. In that instance, I believe that that's not important in how, or critical to how they came to their decision in that case, because in that case, the court held that the difference between certified mail, return receipt requested, and regular mail, return receipt requested, is not of pivotal importance. When both the document, that the addressee received, when they both document that the addressee, excuse me, received the letter. In this case, the court ultimately ruled that there was no service here because the owner was served via regular mail, which provides for no assurance of receipt. In the Lakeshore case present before your honors, they were served. There is acknowledge of the receipt. Your honor, lastly, with regard to a policy argument about why Lakeshore should prevail in this case, is the PCB argues that this 39.2 should be strictly construed. It's not in the statute. It's a judicially created concept, as it relates mainly to timing. In fact, all of the cases cited by the PCB in their brief under the issue, or by the Pollution Control Board in their opinion and order under the issue, and regarding strict compliance, they all relate to timing issues. So the strict compliance argument is inappropriate in this context. Strict construction, if it were to be applied here, could lead to absurd results. Are you going to get personal service now via posting? Are we going to have to redefine what personal service is? Your honors, what was found in the King County Defender's case, is that when cases are involving landfill stiving applications and notice requirements, the courts have held that the most critical stage is the public comment on the proposed site. The board also argues that this court has to give deference to the agency decision, and since Loper-Bright came out in 2024, that is no longer the case, as the interpretation of statutes is best left to the judicial branch. There is no longer the Chevron deference. In cases where the courts have found that errors are okay to confer jurisdiction, we have the Tate case, Tate versus the Pollution Control Board. That case required attachments to be filed to the application, and this was a statute that was in existence before the current version, and the applicant didn't attach those documents, but the court still conferred jurisdiction. The Dogs versus Pollution Control Board case is another one. They used the wrong legal description, and the legal description they used was for a parcel six miles away from the actual site. The court held that that wasn't a big difference because it provided interested persons with notice and found that that was sufficient. Lastly, Your Honors, I would argue that the statute and case law define purpose. The case of Will County versus Rockdale, cited by the Pollution Control Board on page 38 of its brief, the act requires that we construe the statute liberally so as to effectuate the purposes of the act, and that's found at 415 ILCS 5-2. The legislative declaration found at 415 ILCS 5-20 defines the purpose of the act as being in the public interest to encourage the recycling and reuse of materials. So, Your Honors, in conclusion, I would argue that the board properly identified the owner by using a real estate parcel map, the only map that would identify those owners. You're not going to find it through a pin. So we identified the correct owners, which was Canadian National, and service was made upon them via UPS Worldwide Delivery Service when they handed it to an individual, the individual signing for it, and the letter later came from Canadian National acknowledging service and not objecting to the proposed facility of Lakeshore. Does any member have any questions of the panel? Thank you. Thank you, Ms. Donnelly. Mr. Mueller, we'll have an opportunity in reply. Mr. Jacobson. Thank you.  May it please the Court. Assistant Attorney General Ben Jacobson on behalf of Respondent Illinois Pollution Control Board. Protect West Chicago Council, my co-counsel, has graciously conceded the whole time to us for this argument, so I'll be able to answer all of Your Honors' questions. This court should affirm the board's vacater and dismissal of Lakeshore recycling, citing application for lack of jurisdiction for three reasons. First, LRS's liberal construction and actual notice arguments have been squarely and repeatedly rejected by the courts. Strict compliance with Section 39.2b is mandatory and jurisdictional. Second, LRS failed to strictly comply with Section 39.2b because it did not consult the authentic tax records of DuPage County, and so it did not serve all of the owners who were entitled in those records. And third, it did not strictly comply with the requirement to provide service in person or by registered mail return receipt requested. And I'd like to start with the issue of strict versus actual or substantial compliance here, because LRS's claims that that requirement has become more liberal over time are simply unsupported by the case law. All of the appellate divisions, including this one, several times, in every case that cited in the briefs have unequivocally required strict compliance with every element of 39.2b and stated that these requirements are jurisdictional. In particular, this court rejected these very same arguments in waste management, stating, we find no legal authority for the petitioner's expansive interpretation of the statute, and, quote, proof of actual notice would not overcome the failure of compliance. And if you look at the quote that has been relied on by Lakeshore Recycling, the first half of that sentence is, as long as there has been compliance with the statute. And if in the cases that they're looking to, in particular like Dobbs, the information that was in the application that was incorrect or inaccurate was not something that was explicitly required by the statute. It was additional information. And so because they had otherwise complied with what was specifically required, and because the actual parties and interests were provided notice, that was fine. And unless your honors have any further questions on this issue, I'd like to move on to the ways in which Lakeshore Recycling did not strictly comply here. Does the Act define personal service? The Act does not describe personal service, your honor. It just says service in person. And, you know, I'd point out, so there are just those two options. And in waste management, this court said those are the two options. So Lakeshore Recycling has conceded that they did not provide service by registered mail, return and receipt requested, in person is all that's at issue here. And they didn't provide service in person. They provided service via a third-party parcel carrier, UPS. And in the Illinois Supreme Court rules, in the Code of Civil Procedure, in the board's rules, there's a distinction between those three different kinds of service. There's service via mail, which has been repeatedly held to mean U.S. mail. There's service via a third-party parcel carrier, which in many situations is totally acceptable and reliable. And then there's service in person. And those three are distinct because each of them has their advantages and their disadvantages. And each of them is dealt with in slightly different ways when we're talking about how we are, you know, confirming that the service was completed. And here, the legislature specifically said service in person. That is different from service via a parcel carrier. So right off the bat there, there is no compliance with that requirement, and that alone is sufficient to affirm the board's decision. Does the act identify who can effectuate personal service? Can it just be anybody? Does it have to be somebody with a particular license or a role? Just to make sure I understand your question, you mean the person who can serve them? Can someone else serve them as long as it's handed to them personally? Your Honor, the statute does not define that, but that doesn't leave us in the Wild West. When we're talking about service, we have plentiful case law and plentiful statutes. There's no need for a license or anything like that? Just it has to be personal service by someone, on someone? You know, I don't have a full answer for that, Your Honor. I believe— Except your answer is it can't be UPS. It can't be UPS, yes. Why? Because that's not in person. In person is directly on the agency. And, you know, here, there's a third-party parcel carrier, which is different from in person under the case law. And I think the situation— What if the UPS driver personally hands it to the registered agent? To kind of get to these two questions together, I think, Your Honors, when we're talking about service in person, I believe we're usually talking about that it's being effectuated by the sheriff or, you know, a private entity that is, as Your Honor said, licensed to provide service in that jurisdiction. And, you know, I'm not familiar with— Or appointed by the court. Or appointed by the court, yes, Your Honor. Not only do they have to be licensed, or they could be a private processor or investigator, but even that takes an extra step, I believe, in the code of civil procedure. Yeah, I don't know that off the top of my head, Your Honor, but that sounds correct. And I'm not familiar with Canadian law, but, you know, they might have a similar situation like that. But the legislature, when it was contemplating what was going to happen here, they had in mind the rest of the statutory code and the rest of the law, which governs service in these situations. What about the fact that the code of civil procedure also names the only representatives of a corporation? They serve the corporation. It's got to be served on certain people in certain positions at that corporation. Do we know who the person was on this dock that got served? No, we don't, Your Honor. The only evidence in the record is that it's someone named Helene. So we don't know that it was an employee. I mean, we can infer that it probably was, given that it eventually made it to someone at Canadian National to accept service, but that's insufficient because the Business Corporation Act governs the service of corporations under Illinois law, unless you have something else that says otherwise. And Section 39.2b or otherwise in the Environmental Protection Act, as far as I know, do not supersede the general provisions of the Business Corporation Act, which provides those various specific ways that you can serve a corporation because it's a fictional entity. It can only act through an agent. And without evidence that Helene here was the registered agent or an actual agent with authority to accept that, it's insufficient. And so, again, that's another independent basis on which this court should affirm the board's decision dismissing this for failure to strictly comply with the requirements of Section 39.2b. And then very briefly addressing the authentic tax records. It is not defined in the statute. This court in Bishop, or the Fifth District in Bishop, looked to the dictionary, and words like genuine, reliable, trustworthy are the words that it focused on. And the issue here is that this website that Mr. Hopp went to and on which LRS relies, when you log on to that website, there's a pop-up. The first thing you see is a pop-up, and it says, in effect, the County of DuPage does not certify that this is a reliable source of information. You should not rely on this information. You should consult the actual records. Does the record, as you understand it, explain the relationship between Canadian National and E. Janney? I believe that it is a parent-subsidiary relationship. I don't know exactly what kind of parent-subsidiary relationship, but still under Illinois law, service on a parent or a subsidiary is insufficient to be construed as service on the other, unless they are really the same entity for all intents and purposes. And so to the extent that that is true here, we don't have that information in the record. So we can't just assume that they are going to be. In the context of this proceeding, whose obligation would it be to ascertain the relationship between Canadian National and E. Janney? I think the overall burden is always going to be with the applicant. Sure, once the applicant presents this information and it appears to be right and someone comes in and challenges it, there is then a little burden on the challenger to at least put into question that the strict compliance has occurred and so what that parent-subsidiary relationship is. But ultimately, because the applicant is the one who's seeking to invoke the jurisdiction of the local citing board and eventually the state to get these permits, the ultimate burden is on them to establish that they have strictly complied with the statute. And here, what we had was that the records that LRS is relying on tell you not to rely on them. And when the records explicitly have a disclaimer that say this is not a reliable source of information, that tells you you have to take another step. Now, it doesn't tell you what that other step is. It could be calling the clerk's office, calling the treasurer, going in person, writing an email, the kinds of things that are reaching out directly to the holders of these records, which is exactly what the Scott Court was getting at. And it's a separate provision that's on the municipal code that it has almost identical language. And what the Scott Court said was in the situation there where the database that they looked at, because it was based on tax assessments, it had half of the parcels just said tax exempt with no owner, it said when you were presented with this information that said half of the properties that were within your 250-foot zone effectively had no owner in this database, you have to take the next step logically to go to some other source to identify who the owners of those properties are. And so that's exactly what we have here where the database that they're relying on says don't rely on this database, go to the original source. And that's all they were required to do. They don't have to do a title search, but they had to take that next step of reaching out to one of these offices in whichever form they thought was most appropriate. And one final point, Your Honors, the railroad tax bills, one of those, the actual tax bill that was sent to the owners of railroad parcels in DuPage County, that was prepared and issued by the treasurer of DuPage County. It is certified by affidavit by the treasurer of DuPage County that that is a certified authentic record of the county, that is an authentic tax record. And then the railroad assessment that was originally prepared by the Illinois Department of Revenue, by law they're the only ones who can actually assess what railroad parcels are, what's due in taxes. Those have been sent to the county, and the county is the one who issues them. That record was in the records of the DuPage County clerk. The clerk in an affidavit certified that that is an authentic record of the county. And even if that didn't originate with the county, once it enters their possession, and they keep it and certify that it's an authentic record of the county, then that becomes an authentic tax record for purposes of the statute. And unless Your Honors have any further questions. Thank you.  Mr. Mueller. Thank you.  If it pleases the court, this case is about form over substance. And the pollution control boards attempt to extend previous case law to an area that has never gone before. The concept of strict construction does not apply to all parts of the notice requirement. It applies only to the timing requirement. And when counsel says every case out there says notice has to be strictly complied with, what he's really saying is in all of the cases that deal with whether or not the notice was timely, courts have required strict construction. As to the other elements of notice, description of the property and the identity of landowners and so forth, there is liberal construction as evidenced by the language in multiple cases, many of which are cited in counsel's brief, that there should be liberal construction as long as the notice, I think the language is something like as long as it puts interested parties on sufficient notice to participate. And the only way to reconcile that liberal construction language with the strict construction language is to understand that the strict construction requirement applies only to timing. And as for the rest of it, we need to do substantial justice. The Pollution Control Board in its brief actually says, if you look at the tax records and identify the wrong owner, that's okay. If you don't look at the tax records but identify the correct owner and serve the correct owner, that's not okay. Now that's the ultimate form over substance argument, and it leads to manifest injustices. So I would ask the court not to extend the PCB's interpretation of 39.2B because they're taking it beyond where the courts ever have. And I might point out, strict construction is not a statutory requirement here. It's a judicially imposed one that has evolved over the years. Secondly, counsel says that we relied on records which are deemed not to be reliable as the wording on those records indicates. No one says, and counsel I think misspeaks when he says, that those documents tell you do not rely on these. With the assessment map that we produced, which identifies Canadian National, what that map shows, beyond question, is that Canadian National is the owner and is the full owner of EJ&E Railroad. And if I can digress for a second, case law in Illinois is that service on a subsidiary does not equate to service on a parent. The converse isn't necessarily true. So the cases cited by counsel with regard to that I don't think are compelling. But regardless, the disclaimer on this map was that it should not be relied upon for legal descriptions or for boundaries. It doesn't say it shouldn't be relied upon for identity of the owners of the property. And what counsel for the Pollution Control Board and for Protect West Chicago have failed to acknowledge is that we actually served the true owner. And the proof of that is that even though the questioning was, well, who was Helene that got the notice? Whoever Helene is, she got it to people in the corporate headquarters office because they sent a letter, which is in the record here, saying, yes, we got the notice, and no, we don't choose to participate. So interested people were put on notice, and that's what's important. They had the opportunity to participate. If you use the thinking that counsel would ask, then you're in a situation where the reality takes second place to this idea that we should consult a record that may or may not be accurate. In this case, that record was not accurate. I see my time's up, so unless there are questions, I will thank the Court. Thank you. All right. The Court thanks both sides for a spirited argument. We will take the matter under advisement and issue a decision in due course.